UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
(EASTERN DIVISION)

FILED
JAMES BONINI
CLERK

08 MAR 10 PM 4: 17

2:08 cv 235

| | | |
|---|---|---|
| **SCOTT A. SAVAGE**<br>**520 State Route 95**<br>**Loudonville, Ohio 44842** | : <br> : | CIVIL ACTION NO. |
| **Plaintiff,** | : | JUDGE ___JUDGE SARGUS___ |
| vs. | : | MAGISTRATE JUDGE KEMP |
| **E. GORDON GEE,** individually and<br>in his official capacity as President<br>of The Ohio State University;<br>205 Bricker Hall, 190 North Oval Mall<br>Columbus, Ohio 43210-1357 | : <br> : <br> : | **COMPLAINT FOR MONEY<br>DAMAGES AND INJUNCTIVE<br>RELIEF** |
| **KAREN A. HOLBROOK,** individually, as<br>former President of The Ohio State University<br>c/o Office of Research<br>University of South Florida<br>3702 Spectrum Boulevard, Suite 175<br>Tampa, Florida 33612-9444 | : | **JURY DEMAND** |
| | : | |
| **NANCY K. CAMPBELL,** individually and<br>in her official capacity as Assistant Vice<br>President, Office of Human Resources,<br>The Ohio State University, Gateway Complex<br>1590 N. High Street, Suite 300<br>Columbus, Ohio 43201 | : <br> : <br> : | |
| **T. GLENN HILL,** individually and in his<br>official capacity as Human Resource Consultant,<br>The Ohio State University, Gateway Complex<br>1590 N. High Street, Suite 300<br>Columbus, Ohio 43201 | : <br> : <br> : | |

**CHRISTOPHER ALVEREZ-BRECKENRIDGE,
DOUGLAS G. BORROR, ALAN W. BRASS, JOHN
C. FISHER, G. GILBERT CLOYD, JO ANN DAVIDSON
KAREN L. HENDRICKS, BRIAN K. HICKS,
ALGENON L. MARBLEY, DIMON R. MCFERSON,
WALSEN W. O'DELL, JOHN D. ONG, RONALD A. RATNER,
ROBERT H. SCHOTTENSTEIN, ALEX SHUMATE,
DEBRA J. VAN CAMP and LESLIE H. WEXNER,**
all in their individual and official capacities as members of

the Board of Trustees of The Ohio State University;
210 Bricker Hall
190 North Oval Mall
Columbus, Ohio 43210

**CHRISTOPHER PHELPS**                              :
1680 University Drive                               :
Ohio State University-Mansfield
Mansfield, Ohio 44906                               :

**NORMAN W. JONES**                                 :
1680 University Drive                               :
Ohio State University-Mansfield
Mansfield, Ohio 44906                               :

**JAMES F. BUCKLEY**                                :
1680 University Drive                               :
Ohio State University-Mansfield
Mansfield, Ohio 44906                               :

**HANNIBAL HAMLIN**                                 :
1680 University Drive                               :
Ohio State University-Mansfield
Mansfield, Ohio 44906                               :

**GARY KENNEDY**                                    :
1680 University Drive                               :
Ohio State University-Mansfield
Mansfield, Ohio 44906                               :

**Defendants**                                      :

## INTRODUCTION

1.1      The Ohio State University ("OSU" or "University") is a public funded

university founded by the Ohio General Assembly and operated by the State of Ohio.  The

largest and most prominent public university in the State of Ohio, OSU is an aggressive

proponent of the Homosexual lifestyle by virtue of its policies and practices.  OSU is

therefore a naturally hostile environment to the expression of traditional Christian beliefs and

morality as taught in the Old Testament and the New Testament.

1.2    This action is a civil brought by Plaintiff Scott Savage under 42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1986 and 42 U.S.C. §1988 against various OSU Administrators, the OSU Trustees, and five faculty members at the Ohio State University, Mansfield campus (hereinafter referred to as "OSU-Mansfield") for violations of his rights guaranteed under the First and Fourteenth Amendments to the United States Constitution and other laws of the United States.   This action arose because Plaintiff Scott Savage dared to express an opinion and recommend a book that was rooted in Christian morality and therefore offended the pro-Homosexual faculty at OSU-Mansfield.

## JURISDICTION AND VENUE

2.1    Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 and §1343.

2.2    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because, upon information and belief, one or more of the Defendants resides in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims arose in this judicial district.

## PARTIES

3.1    Plaintiff Scott A. Savage is a resident of Ashland County, Ohio and a citizen of the United States of America.  Savage is a devout Christian and a member of the Religious Society Of Friends (Conservative).  Mr. Savage wears the traditional garb of that sect and is clearly identifiable as a Christian.  From August 2004 until July 5, 2006, Mr. Savage served as the Head of Reference and Library Instruction at the Bromfield Library, OSU-Mansfield.

3.2    Defendant E. Gordon Gee is the President of The Ohio State University ("OSU" or "University"), a public funded university founded by the Ohio General Assembly and operated by the State of Ohio.  His duties include, among others, oversight of OSU and the

3

adoption and publication of polices that govern OSU.   President Gee is sued for prospective relief in both his individual and his official capacities.

3.3     Defendant Karen A. Holbrook was the OSU President from October 1, 2002 until June 30, 2007.  Upon information and belief, Holbrook is currently the Vice President for Research & Innovation at the University of South Florida.  While serving as OSU President, Holbrook's duties included, among others, oversight of OSU and the adoption and publication of polices that govern OSU.  Defendant Holbrook is sued in her individual capacity for money damages.

3.4   Defendant Nancy K. Campbell is the Assistant Vice President, Office of Human Resources at OSU.  Defendant Campbell's duties include, among others, oversight of the office of Human Resources, including the implementation and oversight of policies and procedures at OSU, and specifically policies and procedures relating to complaints of sexual harassment.  Defendant Campbell is sued in both her individual and official capacities for damages and for prospective relief.

3.4     Defendants Christopher Alverez-Breckenridge, Douglas G. Borror, Alan W. Brass, John C. Fisher, G.Gilbert Cloyd, Jo Ann Davidson, Karen L. Hendricks, Brian K. Hicks, Algenon L. Marbley, Dimon R. McFerson, Walsen W. O'Dell, John D. Ong, Ronald A. Ratner, Robert H. Schottenstein, Alex Scumate, Debra J. Van Camp and Leslie H. Wexner  (collectively "Trustees"), all in both their individual and official capacities as members of the Board of Trustees of The Ohio State University. The Trustees are being sued for prospective relief.

3.5   Defendants Christopher Phelps, Norman W. Jones, James F. Buckley, Hannibal Hamlin and Gary Kennedy were residents of the State of Ohio and faculty members at OSU-

4

Mansfield at all times relevant to this Complaint. Jones and Buckley openly profess their homosexuality. Phelps, Hamlin and Kennedy are aggressively supportive of the Homosexual lifestyle. These five OSU-Mansfield faculty members are being sued in both their individual and official capacities for damages and prospective relief.

## OPERATIVE FACTS

### A. The Recommendation of a Politically Incorrect Book.

4.1   In early February, 2006, Plaintiff Scott A. Savage agreed to serve on the First Year Reading Experience Committee ("Committee"), the purpose of which was to select books that OSU-Mansfield's freshmen students would be required to read as part of their immersion into college life. At the Committee's first meeting, several books were proposed that carried a leftist perspective on history, culture, or politics. The proposed books included works by Richard Dawkins, Jared Diamond and Jimmy Carter.

4.2   On March 2, 2006, the list of book titles was emailed to Committee members by the Committee chair, Donna Hight. Each book title was followed by a brief Amazon.com description, and comments were solicited. In an email reply to Hight, Mr. Savage took the position that the Committee should not choose potentially polarizing books and suggested an alternative book to the Committee: *Freakonomics: A Rogue Economist Explores the Hidden Side of Everything* by Stephen J. Dubner. Later that day Hight forwarded Mr. Savage's comment and book suggestion via e-mail to other Committee members.

4.3   On March 3, 2006, Defendants Jones and Hamlin sent e-mails to every other Committee member criticizing Mr. Savage's suggestion and disputing the polarizing nature of the originally suggested books. Defendant Hamlin, a committee member, suggested that

the purpose of the reading assignment was to uphold the values of the university, particularly with regard to support for homosexual rights and opposition to Christian fundamentalism. Having Savage's Christian belief's in mind, Hamlin wrote:

> If the idea is to seriously engage the students in an issue or issues of real importance, it is bound to be at least somewhat divisive. And if it isn't, how are we going to generate any meaningful discussion? Furthermore, I think the university can afford to polarize, and in fact has an obligation to, on certain issues....I would say polarize away....Certainly this may offend some students who come from [a Christian fundamentalist] background or hold such beliefs. But welcome to the secular university....[N]o position is held off-limits at an institution like OSU....Any student who has a rigid set of beliefs that he or she feels cannot even be discussed should not come to a public university.

On the other hand, Hamlin "[doubted that] the book should be chosen because the university can officially agree with everything that's in it. It ought to be chosen because it raises important questions for discussion, whatever one ultimately decides about them."

4.4   On March 8, 2006, in reaction to Hamlin's comments, Mr. Savage suggested via e-mail to the Committee that perhaps the conventional wisdom of the university should be challenged and proposed four current conservative books: *The Marketing of Evil* by David Kupelian, *The Professors* by David Horowitz, *Eurabia: The Euro-Arab Axis* by Bat Ye'or, and *It Takes a Family* by Senator Rick Santorum. As required by Committee protocol, Mr. Savage included excerpts from Amazon.com's descriptions of the books.

### B.   OSU's Diversity Cadre Delivers a Lesson on Modern-Day "Tolerance"

4.5     On March 9, 2006, Jones e-mailed the Committee taking issue with Mr. Savage's recommendation of *The Marketing of Evil*, labeling it "anti-gay" and "homophobic tripe." Mr. Savage, who had not yet read *The Marketing of Evil*, e-mailed the Committee to offer other reviews of the book and to defend his academic freedom to suggest it to the Committee. Jones then took the further step of sending a private e-mail to Mr. Savage's

supervisor, Library Director Beth Burns, questioning the integrity of the library staff and implicitly attacking Mr. Savage's professionalism. Jones also sent an e-mail to the campus Dean, threatening to look for other work and explicitly denigrating Mr. Savage's professionalism in suggesting the book. Jones then sent another e-mail to the Committee attacking Mr. Savage's academic opinions.

4.6   Hamlin responded with an e-mail to the Committee warning Mr. Savage that requiring students to read *The Marketing of Evil* would violate OSU-Mansfield's discrimination policy.

4.7   Mr. Savage did not reply to these or any later comments or accusations, perceiving that the discussion had degenerated from the professional task of producing a freshman reading list to an effort by faculty members to enforce their own liberal orthodoxy at OSU-Mansfield and to punish and humiliate Mr. Savage for his viewpoint.

4.8   After the March 9 e-mail exchange, Defendant Buckley, a faculty member who was <u>not</u> on the Committee, sent an e-mail to all OSU-Mansfield faculty and staff criticizing Mr. Savage's book suggestion, denigrating his professionalism, and claiming that he (Buckley) felt threatened and harassed by Mr. Savage.

4.9   During the weekend of March 10-12, Defendants Jones, Buckley, Kennedy, Hamlin and Phelps, along with faculty members Terri Fisher and Barbara McGovern, discussed by email how to bring the "problem" to the attention of the full faculty.

4.10   On March 12, 2006, Jones sent an email to all faculty members attacking Mr. Savage's professional competence, and accusing him of "harassment" and "creating a hostile work environment" for himself and Buckley. Jones also claimed that Mr. Savage had acted unprofessionally by disagreeing with Jones' assessment of the book and had "impugn[ed]

both [Jones'] credibility as well as that of the entire OSU-Mansfield faculty in determining the basic standards of scholarly integrity."

4.11 At a March 13, 2006 faculty assembly, a public meeting, Defendant Hamlin accused Mr. Savage of defending "hate literature" and stated to the faculty assembly that the overriding issue raised by Mr. Savage's conduct was that of "sexual harassment." Jones agreed that "It is a sexual harassment issue." Based upon the facts known to Hamlin and Jones at that time, their statements to the faculty assembly were knowingly false and slanderous, as no reasonable person, educated or not, could seriously believe that a book recommendation violated OSU's sexual harassment policy. In fact, Jones and Hamlin were paving the road with their willing colleagues on the OSU-Mansfield faculty to retaliate against Mr. Savage for his willingness to challenge liberal faculty members on an important public issue relating to the education of OSU-Mansfield freshmen.

### C. The Sexual Harassment Complaint Against Mr. Savage.

4.12 In response to the slanderous and retaliatory advocacy of Jones and Hamlin, and encouraged and abetted by Phelps, Jones and Buckley, the faculty unanimously approved a motion to forward a sexual harassment allegation to a university investigator accusing Mr. Savage of sexual harassment.

4.13 On March 14, 2006, Mr. Savage was informed by a part-time faculty member who *had not attended* the March 13 faculty assembly that she had heard a campus rumor that Mr. Savage was being charged with sexual harassment.

4.14 On March 15, 2006, the faculty met and rescinded its vote on the sexual harassment motion because of concerns and confusion over the faculty's authority on the matter. However, Kennedy and Hamlin continued to press the issue, falsely accusing Mr.

Savage of discriminatory harassment, seeking other policies under which Mr. Savage's constitutionally protected speech could be punished, and urging that a discrimination/harassment claim be filed against Savage. Hamlin's advocacy persuaded the faculty assembly to instruct Kennedy, Jones and Buckley to file individual formal complaints of discrimination/harassment against Mr. Savage.

4.15   On March 16, 2006, Kennedy filed a discrimination/harassment complaint on behalf of Buckley and Jones with OSU-Mansfield's Human Resources Officer. The complaint was received and investigated as a "sexual harassment" complaint by Defendants Campbell and Hill at the OSU Office of Human Resources. A copy of the OSU Sexual Harassment Policy 1.15 is attached hereto as *Plaintiff's Exhibit 1* and incorporated herein fully by reference. Instead of rejecting the Kennedy complaint from the outset for its clear failure to meet even the minimal standards for sexual harassment or any other harassment, Campbell and Hill began a full investigation. Meanwhile, then-President Holbrook became fully apprised of the complaint and failed to exercise her authority to put a stop it.

4.16   After receiving notice of the sexual harassment complaint and investigation, Mr. Savage sought the assistance of the Alliance Defense Fund (ADF), a legal alliance that, among other things, works to protect religious liberty and speech. As to Mr. Savage, the ADF's Center for Academic Freedom sought to protect his equal rights to free speech and academic freedom. On March 28, 2006, the ADF sent a letter to Defendants Holbrook, Campbell and Hill demanding on behalf of Mr. Savage that they "Cease and Desist" the sexual harassment investigation and publicly vindicate Mr. Savage of the charge. A copy of the ADF letter is attached hereto as *Plaintiff's Exhibit 2* and incorporated herein fully by reference.

9

4.17    Although OSU's General Counsel received and responded to the ADF letter, OSU did not terminate the investigation of Mr. Savage.  On March 30, 2006, Defendant Hill continued the investigation by meeting with Kennedy, Buckley and Jones.

4.18    On April 11, 2006, ADF wrote another letter to OSU's General Counsel, a copy of which is attached hereto as *Plaintiff's Exhibit 3* and incorporated herein fully by reference, requesting again that the sexual harassment investigation against Mr. Savage be terminated.  Also on April 11, 2006, Mr. Savage filed his own letter of complaint with his supervisor (in accordance with OSU policies) charging Defendants Phelps, Jones, Buckley, Hamlin and Kennedy with the filing of a false charge of sexual harassment.  A copy of Mr. Savage's April 11, 2006 letter of complaint is attached hereto as *Plaintiff's Exhibit 4* and incorporated herein fully by reference.

4.19    On April 17, 2006, at the next scheduled faculty assembly, Hamlin accused Mr. Savage of unprofessional behavior and specifically accused him of "taking actions that are unethical and against the university."

**D.    The Sexual Harassment Investigation is Completed with No Finding of Harassment**

4.20    On or about April 20, 2006, Mr. Savage received a letter from Defendant Hill, postmarked April 18, 2006 but dated April 6, 2006, stating that Mr. Savage was not guilty of discrimination/ harassment and that the charges should never have been filed.  A copy of that decision is attached hereto as *Plaintiff's Exhibit 5* and incorporated herein fully by reference.

4.21    On April 26, 2006, Defendant Hill issued a letter not only informing Mr. Savage that the conduct of Defendants Phelps, Jones, Buckley, Hamlin and Kennedy did <u>not</u> constitute a false allegation of sexual harassment under the OSU policy, but justifying it as reasonable. A copy of Defendant Hill's decision is attached hereto as *Plaintiff's Exhibit 6* and

incorporated herein fully by reference. Unfortunately for Mr. Savage, the zeal of Defendants Phelps, Jones, Buckley, Hamlin and Kennedy to punish Mr. Savage for his protected speech and beliefs was only encouraged by Defendant Hill's decision.

### E. Faculty Retaliation Continues; Mr. Savage Takes Leave of Absence

4.22    In a series of e-mails and communication dating from immediately after their public exposure in early April 2006 and continuing to at least the end of May 2006, those five OSU-Mansfield faculty members continued to conspire to drive Mr. Savage from his position at OSU-Mansfield. Even though the unwarranted investigation of Mr. Savage's free speech had concluded with no finding of sexual harassment, and as Mr. Savage was considering taking a leave of absence due to the already hostile atmosphere that had been created on the OSU-Mansfield campus, the Defendant faculty members were gearing up a campaign to further harass Mr. Savage and to make his work in the library impossible.

4.23    For example, Defendant Phelps urged the entire faculty via e-mail to turn non-faculty employees against Mr. Savage: They were advised to "...prep the staff [members] we know that he may be thinking of suing, and what a disgrace that will be, how much of the institution's resources he will be squandering, how disloyal it will be."

4.24    As another example, Defendant Hamlin stated in an April 17, 2006 public faculty meeting that the defining issue was still "sexual harassment." A month later he sent email communications to all OSU-Mansfield faculty asserting that "the issue is diversity and discrimination" and that Mr. Savage's behavior (retaining legal counsel and giving press interviews) was "aggressive" and "threatening."

4.25    On May 19, 2006, The OSU- Mansfield Dean stated in correspondence to the University Provost that "[Defendant] Hannibal [Hamlin] represents the group of faculty who

11

are angry with me for not taking the side of the faculty against the reference librarian. They

do not see this as a faculty issue, but rather as a personnel issue (they want me to fire Scott

Savage)."

4.26    On May 21, 2006, Defendant Phelps sent to the University Provost, with copies

to all OSU-Mansfield faculty members, the following statement concerning Mr. Savage's

future relationship with the OSU-Mansfield faculty:

> "How can we trust this reference librarian to direct our students to high-
> quality sources, knowing he thinks an absurd book like *The Marketing of
> Evil* is appropriate for university study? How can any of us request
> assistance from him on matters of political controversy, knowing from his e-
> mail habits that he will not respect the confidentiality traditional to the
> library-patron relationship? (Not only did he send e-mails to FIRE but he
> has a very intimate relationship with WorldNetDaily, a vituperous and rabid
> web site that has gay-baited my colleagues, redbaited me personally, and has
> slandered our university and its diversity policy -- all with the obvious
> collusion and approval of this librarian.) How, especially, can our students
> and colleagues working on such topics as the psychology, sociology, or
> history of sexuality ever make use of him? Can gay staff, students, and
> faculty rely upon him for impartial assistance? Those are some of the severe
> repercussions that surround having a head reference librarian who lacks
> professionalism and is an acknowledged advocate of bigotry. This is why
> the faculty has united in its dismay that the university has not addressed this
> matter more vigorously and forthrightly and has left the faculty to be
> criticized in the news media on spurious grounds."

4.27    The foregoing communications are but a sample of the concerted actions of

Defendants Phelps, Jones, Buckley, Hamlin and Kennedy that made it impossible for Mr.

Savage to continue his teaching and librarianship activities at OSU-Mansfield. On July 5,

2006, Mr. Savage took a leave of absence from his employment at OSU-Mansfield, a

decision caused by his extreme emotional distress that was the direct result of Defendants'

false and defamatory accusations against him combined with the failure of the OSU

administration to take any meaningful action to vindicate him or to correct the malicious

conduct of Defendants Phelps, Jones, Buckley, Hamlin and Kennedy.

## F.  The OSU Administration Mocks Mr. Savage's Rights.

4.28    In March and April 2007, respectively, Mr. Savage filed civil actions in the

Richmond County (Ohio) Court of Common Pleas and the Ohio Court of Claims seeking to

recover damages from Defendants Jones, Hamlin, Buckley and Kennedy for state law claims

of defamation and the intentional infliction of emotional distress.  The operative principle of

the Court of Claims Act, Ohio Revised Code Chapter 2743, is that a plaintiff cannot pursue a

claim for damages against state employees in a Court of Common Pleas until there is an

immunity determination hearing in a separate lawsuit against the State in the Court of

Claims.  If the Court of Claims finds that the state employees acted maliciously or outside the

scope of their employment, the plaintiff can proceed against the state employees in the Court

of Common Pleas.  If, however, the Court of Claims determines that the state employees

acted within the scope of their employment and without malice, the state employees are

immune from suit and the plaintiff's only remedy is to proceed against the State of Ohio in

the Court of Claims.  Both of Mr. Savage's state court actions are still pending and there has

not yet been a state law immunity determination hearing in the Court of Claims.

4.29    After Mr. Savage filed the two state court actions, the Ohio Attorney General's

Office appeared in both courts to represent (i) Defendants Jones, Hamlin, Buckley and

Kennedy in the Richland County Court of Common Pleas, and (ii) the State of Ohio and

OSU-Mansfield in the Court of Claims.  To the consternation of Mr. Savage, the attorneys

representing OSU-Mansfield in the Court of Claims allied themselves with Defendants Jones,

Hamlin, Buckley and Kennedy and proceeded to ridicule Mr. Savage's claims as nothing

more than petty differences with the faculty members.  The attorneys representing OSU-

Mansfield conveyed a ferociously mocking, belittling attitude toward Mr. Savage's claims of

13

mistreatment by the OSU-Mansfield faculty, while evading any mention of the false

accusations of sexual harassment made by those faculty members and their affect on the core

issues of intellectual and academic freedom. The nasty and derisive tone of the University's

attorneys in both their written and oral arguments to the Court of Claims convinced Mr.

Savage that he would have no institutional backing at the highest administrative level were

he to return to his library position at OSU-Mansfield. Consequently, on March 27, 2007, Mr.

Savage wrote a letter of resignation to the Dean of the OSU-Mansfield campus indicating

that he could not return to his position. A copy of Mr. Savage's letter of resignation is

attached hereto as *Plaintiff's Exhibit 7* and incorporated herein fully by reference.

### G. Damage To Mr. Savage

4.30    Mr. Savage is a man with sincerely held Christian beliefs regarding honesty,

Christian charity, sexual purity and marital fidelity. He has been married for 18 years and he

is the father of 8 children. It remains extremely distressing to Mr. Savage that his name is

linked on campus (and probably elsewhere) with allegations of sexual harassment, unethical

behavior, and hatred of his fellow man. No amount of diligence and discovery by Mr.

Savage, in the context of litigation of otherwise, could ever determine the extent to which his

name is now linked with those allegations in the minds of people, known and unknown to

him.

4.31    Mr. Savage has also been irreparably harmed in his chosen profession as a

librarian. Not only is an accusation of "sexual harassment" toxic to any opportunity for

employment, especially within the public sphere for which Mr. Savage received his graduate

training, but public accusations of "homophobia" and claims of "anti-gay" attitudes poisons

Mr. Savage's opportunities in his field of librarianship, where a significant percentage of

14

employees and employers self-identify as homosexuals or pro-homosexuality.  To date, Mr. Savage's attempts to apply for library positions in his area of Ohio have simply gone unanswered.  In the only local library conference he attended following the sexual harassment allegation, his experience was that the solitary colleague who deigned to come near him during a break in the proceedings read his name tag and instantly jumped back a step while she asked if he was "that Scott Savage." While Mr. Savage has mitigated his damages by working for himself as a consultant and farmer since leaving OSU-Mansfield, he desires reinstatement at OSU under circumstances where constitutional rights and academic freedom will be protected.

4.32    Mr. Savage was constructively terminated by the unconstitutional conduct and policies of the Defendants.  Mr. Savage's ability to do his job on the small campus of OSU-Mansfield has been poisoned.  Not only does he seek reinstatement to his position as an Ohio State University librarian, he must be placed with another library in the Ohio State University Library system that will not cause him further exposure to the venomous environment that endures on the OSU-Mansfield campus.

### H.   Miscellaneous Allegations Regarding Defendants

4.33    All of the statements and conduct of Defendants Phelps, Jones, Buckley, Hamlin and Kennedy were deliberately designed to punish and humiliate Savage for what they perceived to be his political and religious viewpoints and for his perceived challenge to the OSU-Mansfield faculty's strictly enforced liberal ideology that, among other things, demands the acceptance of homosexuality as healthy and normal human behavior.

4.34    The conduct of Defendants Phelps, Jones, Buckley, Hamlin and Kennedy was conspiratorial, malicious, calculated and intentional, and it violated Mr. Savage's clearly

15

established federal constitutional and statutory rights, including the rights to freedom of speech and academic freedom. Defendants Holbrook, Campbell and Hill, by their inaction and neglect, also violated Mr. Savage's clearly established federal constitutional and statutory rights.

. 4.35 All of the named Defendants are state actors, by virtue of their respective positions as OSU Administrators, OSU Trustees responsible for personnel policies, and OSU-Mansfield faculty members. They have also acted under color of law by virtue of how they invoked or applied the OSU policies to injure Mr. Savage.

## FIRST CAUSE OF ACTION
### First Amendment Retaliation

5.1 Plaintiff hereby incorporates paragraphs one through 4.35 as though fully restated here and further states the following.

5.2 Defendants Phelps, Jones, Buckley, Hamlin and Kennedy conspired and acted in concert to defame Mr. Savage, to file a false sexual harassment charge against him, and to create a work environment too hostile for a man of Mr. Savage's personal and religious beliefs and professional expectations to continue working at OSU-Mansfield, all of which was done to punish and retaliate against Mr. Savage for his speech on an important public issue relevant to the education of OSU-Mansfield students. Such conduct by Defendants Phelps, Jones, Buckley, Hamlin and Kennedy constituted First Amendment retaliation, violated Mr. Savage's rights under the First and Fourteenth Amendment to the U.S. Constitution, and gives rise to a claim for money damages under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION
### Equal Protection Violation

6.1  Plaintiff hereby incorporates paragraphs one through 5.2 as though fully restated here and further states the following.

6.2  Defendants Phelps, Jones, Buckley, Hamlin and Kennedy conspired, acted in concert, and retaliated with an invidious class-based discrimination against Mr. Savage to deprive him of equal protection of the laws and equal privileges and immunities under the laws, all because Mr. Savage engaged in speech that supported, directly or indirectly, traditional Christian morality and which was deemed offensive, directly or indirectly, to the Homosexual lifestyle and social agenda.  Such conduct and purpose by Defendants Phelps, Jones, Buckley, Hamlin and Kennedy deprived Mr. Savage of equal protection under the laws and equal privileges and immunities under the law, all of which gives rise to a claim for money damages under 42 U.S.C. §1983 and §1985.

## THIRD CAUSE OF ACTION
### Action For Neglect To Prevent §1985 Violation

7.1  Plaintiff hereby incorporates paragraphs one through 6.2 as though fully restated here and further states the following.

7.2  Defendants Holbrook, Campbell, and Hill were in positions of authority at OSU with the power to prevent, or aid in preventing, the commission of the violations of equal protection described in this Complaint and in paragraph 6.2 above, yet neglected and refused to do so, all of which gives rise to a claim for money damages under 42 U.S.C. §1986.

## FOURTH CAUSE OF ACTION
### Vague and Substantially Overbroad Policy

8.1 Plaintiff hereby incorporates paragraphs one through 7.2 as though fully restated here and further states the following.

8.2 The OSU Sexual Harassment Policy (1.15), as written, as interpreted and enforced by OSU Administrators, and as was applied in the case of Mr. Savage, is unconstitutionally vague and overbroad with respect to speech. While the policy may be legitimately written to prohibit certain kinds of offensive sexual speech in the university setting, it is in fact substantially vague and overbroad because it has been and is likely to be used to chill and punish a substantial amount of protected speech in the future. Mr. Savage has been injured by the OSU policy in the past and there is a significant likelihood that he will be injured or chilled by it in the future, as will others who are not currently before the Court, unless the policy is modified to comply with constitutional standards, all of which violates the First and Fourteenth Amendment to the U.S. Constitution and gives rise to a claim for injunctive relief against Defendants Gee, Campbell, Hill and the OSU Trustees under 42 U.S.C. §1983.

## FIFTH CAUSE OF ACTION
### Due Process Violation and Claim For Reinstatement

9.1 Plaintiff hereby incorporates paragraphs one through 8.2 as though fully restated here and further states the following.

9.2 As was stated in paragraph 4.32, Mr. Savage was constructively terminated from his position at OSU-Mansfield for forbidden reasons: public defamations in conjunction with the unconstitutional, retaliatory conduct of the five OSU-Mansfield members and the unlawful inaction of Defendants Holbrook, Campbell and Hill. Mr. Savage was thus

18

deprived of liberty and property interests without due process of law, all of which gives rise to a claim for injunctive relief for reinstatement against Defendants Gee, and the OSU Trustees under 42 U.S.C. §1983.

   **WHEREFORE**, Plaintiff Scott A. Savage prays for the following relief:

A.   Compensatory damages against Defendants Phelps, Jones, Buckley, Hamlin, Kennedy, Holbrook, Campbell and Hill in an amount to be determined at trial;

B.   Punitive damages against Defendants Phelps, Jones, Buckley, Hamlin and Kennedy in an amount to be determined at trial;

C.   Injunctive relief ordering Defendants Gee and Trustees to reinstate Plaintiff to a library position other than his former position at OSU-Mansfield;

D.   Injunctive relief ordering Defendants Gee and Trustees to amend or modify the OSU Sexual Harassment policy to conform to acceptable constitutional standards so that it can no longer be used to harass and punish constitutionally protected speech and academic freedom.

E.   Reasonable attorney fees and costs of this litigation under 42 U.S.C. §1988;

F.   Any such other relief, both legal and equitable, to which he may be entitled.


                         Respectfully submitted,


                         Thomas W. Condit (0041299)
                         P.O. Box 12700
                         Cincinnati, Ohio 45212
                         (513) 731-1230
                         (513) 731-7230 (fax)
                         twcondit@fuse.net
                         **Trial Attorney For Plaintiff**

19

## JURY DEMAND

Plaintiff Scott Savage hereby demands a trial by jury on all issues raised herein.

_____

Thomas W. Condit, Attorney